**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**KAFAREN FAIRLEY**                                                                              **PLAINTIFF**

**VERSUS**                                                                                       **2:04cv147KS-MTP**

**DENISE CROWELL; DALE HARRIS; And
CONTINENTAL CASUALTY COMPANY**                                                                   **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on separate Motions for Summary Judgment filed on behalf of Denise Crowell ("Crowell") and Dale Harris ("Harris") **[#78]** and on behalf of Continental Casualty Company ("Continental") **[#99]**.  The court, having reviewed the motions, the responses, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motions are well taken and should be granted.  The court specifically finds as follows:


**FACTUAL BACKGROUND**

The plaintiff, Kafaren Fairley, filed this lawsuit against the defendants, Crowell and Harris, on January 15, 2004, along with the defendants, Manpower, Inc., and Continental, as part of a bad faith lawsuit arising out of her underlying workers compensation claim.  Continental provided workers compensation insurance to Manpower pursuant to Miss. Code Ann. §71-3-5 (1972).  Fairley was an employee of

Manpower at the time she suffered the injury that was the subject of her workers compensation claim.

Crowell was an employee of RSKCo Services, Inc., ("RSKCo"). She was the adjuster handling Fairley's claim until January of 2003. Harris was an employee of Continental and was the adjuster who ultimately took over the handling of Fairley's workers compensation claim in October of 2003 and concluded the claim following entry of the Administrative Judge's Order awarding benefits to Fairley after the matter was tried before the Administrative Judge in July of 2003.

On or about November 29, 1999, Fairley, working through Manpower, was operating as an assembly line worker at the Sunbeam plant in Hattiesburg, Mississippi, when she claimed that she suffered a compensable injury arising out of her employment. The injury that she suffered was ultimately determined to be bilateral carpal tunnel syndrome. She reported her condition to her employer which subsequently reported the injury to Continental.

Continental assigned the claim to an adjuster who made contact with Fairley on December 2, 1999. Fairley began receiving temporary total disability (TTD) benefits as of December 10, 1999, for the period beginning November 30, 1999, and continuing through February 21, 2000. At that time, Fairley returned to work briefly at the American Red Cross. She left this employment in May of 2000, and began receiving TTD again as of June 5, 2000, for the period beginning May 26, 2000.

Continental sent Fairley to Doctor Michael Kanosky for an IME in May of 2000. Thereafter, Fairley began seeing Dr. Kanosky as her treating physician. On May 26, 2000, Fairley consented to and received a carpal tunnel release on her right wrist

performed by Dr. Kanosky.  Later, in June of 2000, she allowed Dr. Kanosky to perform a carpal tunnel release on her left wrist.  She followed with Dr. Kanosky until September of 2000.  On August 29, 2000, Dr. Kanosky had prepared a document indicating that Fairley could return to work.  He placed no restrictions on her as to her right hand/wrist and designated it as "full duty."  He placed a "light duty" restriction on the left hand/wrist.  Dr. Kanosky faxed this document to Continental's nurse case manager, Kathy Frasier, who in turn provided it to Crowell.  Manpower was made aware of Fairley's ability to return to work and her restrictions and immediately found suitable employment within this restriction.

Based upon the release to return to work, Crowell discontinued Fairley's TTD benefits as of September 5, 2000, that being the date that suitable re-employment was offered by Manpower.  Thereafter, Fairley contacted Crowell on September 12, 2000, to express her displeasure at having her TTD terminated and being released to go back to work by the doctor.  Crowell explained the release to her and the offer of employment by Manpower.  Fairley at that time allegedly stated that she would not "work in a soup kitchen" and that if there was in fact a release from the doctor, that she would "shoot him."  No further contact occurred between Crowell and Fairley directly after that telephone call.

Fairley then began to express dissatisfaction with Dr. Kanosky and allegedly told Continental that he was never her choice of treating physician.  She indicates that he was forced on her by the defendants.  This belies the facts of plaintiff's conduct.  She was referred to Dr. Kanosky for an IME.  She made the choice to use him as her treating physician and allowed him to perform two surgeries on her, apparently with

3

good results.  Fairley expressed no dissatisfaction with Dr. Kanosky until he released her to work.

On October 27, 2000, Crowell prepared the B-31, Notice of Final Payment, having heard nothing further from Fairley, sent it to the Mississippi Workers Compensation Commission, and it was thereafter filed of record at the MWCC on November 14, 2000, according to the file stamp.  On November 9, 2000, Fairley filed her Petition to Controvert in the MWCC through her counsel, Joseph Albe, also her counsel in this present lawsuit.[1]  At this point in time, Fairley's claim was clearly disputed, and had been disputed since Fairley declined the work offered to her by Manpower in early September of 2000.

Fairley began to seek approval for a new treating physician of her choosing, Dr. Lindley.  A hearing before the Administrative Judge in October 2001, ordered Continental to pay for an evaluation by Dr. Lindley.  This evaluation was completed in February of 2002.  Dr. Lindley concluded that the plaintiff could not work and recommended further testing to determine the full extent of the plaintiff's injuries.

The controversion proceedings continued until their culmination at trial before the Administrative Judge in July of 2003.  The Administrative Judge issued her order on October 23, providing that Fairley was entitled to TTD benefits from November 30, 1999, through August 29, 2000, with proper credit to be given to Continental for benefits previously paid.  Additionally, the plaintiff was awarded permanent partial disability

---

[1] The Complaint on file herein indicates that Fairley filed her Petition to Controvert on April 12, 2001. However, this was actually her re-filing of the Petition to Controvert because the MWCC dismissed her original petition on March 29, 2001, as a sanction for her counsel's failure to make her available for deposition. of September 5, 2000, that being the date that suitable re-employment was offered by Manpower.

benefits (PPD) at her average weekly wage for 40 weeks for the loss of industrial use of her right upper extremity and PPD at her average weekly wage for 100 weeks for the industrial loss of use of her left upper extremity. Finally, Fairley was awarded reasonable and necessary future medical treatment to be paid by Continental.

Following entry of this Order, Fairley's attorney, on October 30, 2003, faxed his interpretation of the Order to Harris, who by this time had become the adjuster on Fairley's file. The attorney requested a printout of any payments for which Continental claimed credit, as well as copies of cancelled checks. Harris responded to the attorney by letter on November 6, 2003, setting forth his calculations based on the order and attaching a printout of prior payments as requested. The final amount due Fairley was calculated to be $22,035.93, which was net of the credit for prior payments. Harris then sent the appropriate checks to Continental's counsel in the workers compensation case, Ben Sheely, who then promptly mailed them to Fairley's counsel on November 19, 2003. Further, pursuant to the Order, Fairley's medical was left open.

Continental had no further contact with the plaintiff until Fairley's counsel faxed a letter to Continental's defense counsel on January 8, 2004, complaining about the calculations and the credits Continental had taken. Plaintiff's counsel also threatened a bad faith lawsuit and demanded $50,000.00 to settle or else he would file suit to enforce the Administrative Judge's Order. Harris responded personally to this letter on January 9, 2004, explaining his actions and declining the settlement demand made by the plaintiff's counsel.

Fairley's counsel then filed the present suit in the Circuit Court of Covington County, Mississippi, for bad faith naming Crowell, Harris, Manpower, and Continental.

The suit was ultimately removed to this Court. After the filing of the motions for summary judgment by Crowell, Harris and Continental, Manpower was voluntarily dismissed and is no longer a party.

After suit had been filed, Fairley filed a motion in the MWCC regarding clarification of the Administrative Judge's Order of October 2003. A hearing was held on that motion on June 8, 2004. On July 21, 2004, the Administrative Judge issued an Order stating that Continental had the right to take credit for all prior payments, ratifying Harris's actions. No appeal was taken from this Order by Fairley. All benefits due Fairley by Continental pursuant to the Administrative Judge's October 2003, Order were paid effective November 19, 2003.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The

movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## BAD FAITH AND PUNITIVE DAMAGES IN MISSISSIPPI

It is well settled Mississippi law that an insurance company which unreasonably refuses to pay a legitimate claim may be subjected to punitive damages. It is equally well settled that "[p]unitive damages are not recoverable for a breach of contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort." *Progressive Casualty Ins. Co. v. Keys*, 317 So.2d 396, 398 (Miss.1975). Neither are punitive damages recoverable "if an insurance company has a legitimate or an arguable reason for failing to pay a claim." *Standard Life Insurance Co. v. Veal*, 354 So.2d 239, 248 (Miss.1977).

## LIABILITY OF THE CARRIER

For punitive damages to be recoverable against an insurer who refuses to pay a claim under Mississippi law, (1) there must have been an absence of a legitimate or arguable reason for denying the claim; and (2) the insurance company must have committed a wilful or malicious wrong, or acted with gross and reckless disregard for the rights of the insured. Both of these elements must be present. *See Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620 (Miss.1988). These same elements must be proved to sustain a bad faith claim against a worker's compensation carrier. *See*

*Southern Farm Bureau Cas. Ins. Co. v. Holland*, 469 So.2d 55 (Miss.1984). Further, the duty which must be fulfilled by a carrier is to perform a prompt and adequate investigation and to deal with the claimant in good faith. *Liberty Mut. Ins. Co. v. McKneely*, 862 So.2d 530, 533, (Miss. 2003). As the *McKneely* Court stated:

> The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith.... Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay....

*Id.* (citations omitted).

In applying this standard, the Court noted that an insurer had a duty to adequately and promptly investigate the claim. *Id.* at 534. The Court went on to state that the plaintiff must prove "that a proper investigation by the insurer 'would easily adduce evidence showing its defenses to be without merit.'" *Id.*

Based on the foregoing, Continental is entitled to judgment as a matter of law. Continental paid Fairley benefits immediately upon notification of her injury and continued them until she was released by her treating doctor, Dr. Kanosky. Thereafter, Fairley filed a petition to controvert, failed to comply with discovery, had that petition dismissed, filed for a reinstatement, requested a new doctor, saw that doctor, was again designated as "light duty" work status, delayed her hand evaluation over mileage reimbursement, forced Continental to file a motion to compel discovery, agreed to an extension of the discovery period, and at the conclusion thereof, had her day before the Mississippi Workers Compensation Commission.

It is true that Continental continued to deny a reinstatement of benefits after the

release by Dr. Kanosky and in the face of Dr. Lindley's report. The fact that Continental's decision proved ultimately to be wrong does not elevate the claim to one for punitive damages. It is incumbent on the plaintiff to offer proof of an intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort in order to proceed on her bad faith claim. The plaintiff has absolutely failed to offer any proof that a genuine issue of material fact exists which would warrant the denial of summary judgement on behalf of Continental.

## LIABILITY OF THE INDIVIDUAL DEFENDANTS

In order for the individual defendants Crowell or Harris to have liability to Fairley, the plaintiff must show that Crowell and/or Harris personally acted grossly negligent, with malice, or with reckless disregard for Fairley's rights. *Bass v. California Life Ins. Co.*, 581 So.2d 1087, 1090 (Miss. 1991); *Dunn v. State Farm Fire & Cas. Co.*, 711 F.Supp. 1359, 1361 (N.D. Miss. 1987). As the Mississippi Supreme Court stated in *Bass*:

> The relationship between an adjuster and the insured is a purely contractual one. The adjuster does not owe the insured a fiduciary duty nor a duty to act in good faith, as the plaintiff claims.... An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim.... However, an adjuster is not liable for simple negligence in adjusting a claim.... He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.

*Bass*, 581 So.2d at 1090 (*quoting Dunn*, 711 F.Supp. at 1361) (citations omitted). However, punitive damages are not favored under Mississippi law and are considered an extraordinary remedy allowed "with caution and within narrow limits." *Veal*, 354

So.2d at 247.

The defendants allege that Crowell, on behalf of Continental, made sure payments of TTD continued to Fairley for the periods in which she was entitled to them and the plaintiff has offered nothing to refute this assertion.  The defendants acknowledge that the only possible oversight was for temporary partial disability benefits during the period from February 22, 2000, through May 25, 2000, while the plaintiff was working for the Red Cross.  However, this was corrected in the payment made pursuant to the Administrative Judge's Order in November of 2003.  Further, this oversight may or may not have even involved Crowell.   The evidence is undisputed that Crowell kept in constant contact with Kathy Frasier, the Nurse Case Manager for Continental, throughout the course of her handling of Fairley's claim so that she knew Fairley's medical status.  Crowell also stayed in contact with Manpower so that she would know when Fairley was working or whether work was available.

When Crowell received the plaintiff's release to return to work from Dr. Kanosky in early September of 2000, she continued benefits through September 4, 2000, when she was advised that suitable employment had been arranged within the restrictions of Fairley's assessment and offered to Fairley by Manpower.

The defendants argue that there was no better document upon which Crowell could rely for terminating the TTD benefits than the treating doctor's release to return to work, and the court agrees.  When Fairley refused the offer of employment, her claim was then disputed and no further obligation arose for Crowell to continue payments.  Crowell's actions do not rise to the level of even negligence, and are certainly not acts of gross negligence, malice, or reckless disregard for Fairley's rights.  Under the facts

now in evidence, there can be no liability of Crowell's part.

Defendant Harris' primary involvement was simply concluding the workers compensation claim following the entry of the Administrative Judge's October 23, 2003, Order. Harris properly calculated what was owed to Fairley pursuant to that order, took proper credit, and sent the checks to Continental's counsel who promptly forwarded them to Fairley's counsel. He timely responded to inquiries from Fairley's counsel. Harris's calculations were shown to be correct by the Administrative Judge's Order dated July 21, 2004. There is no evidence of negligence on Harris' part and there is certainly no evidence of gross negligence, malice, or reckless disregard for Fairley's rights. There can be no liability on the part of Harris.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment filed on behalf of Continental Casualty Company **[#99]** is Granted, and the Motion for Summary Judgment filed on behalf of Denise Crowell and Dale Harris **[#78]** is Granted and the plaintiff's Complaint is dismissed with prejudice and any other pending motions will be dismissed as moot. A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 16th day of August, 2006.

s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE